## Ætna Insurance Company et al. v. Abraham Jacobson et al.

1. FORFEITURES—*Burden of Proof upon One Claiming.*—Forfeitures are not favored by the law. The burden is on him who claims the benefit of a forfeiture to clearly establish his right.

2. MORTGAGES—*Execution Not a Change of Title.*—The execution of a mortgage upon insured property is not a violation of the covenant against a change of title.

3. DEEDS—*May be Shown to be Mortgages.*—A deed absolute in form, may be shown by parol to be a security only, if such be the fact.

4. INSURANCE—*Acts Constituting a Waiver of the Condition Requiring Proof of Loss.*—A distinct denial of liability, and refusal to pay on the ground that there is no liability, is a waiver of the condition requiring proof of loss.

5. EQUITY PRACTICE—*Due Weight Should be Given to the Conclusion of the Master.*—Due weight should be given to the conclusion of the master when the witnesses were before him, because of the advantage which he derives from seeing them and judging of their credibility.

6. SAME—*Where Finding of the Master Has Been Approved by the Chancellor.*—Where the finding of the master has been approved by the chancellor, an appellate tribunal will not disturb the finding unless the weight of the evidence is manifestly and clearly against the finding.

Bill to Foreclose a Trust Deed.—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed December 22, 1902.

Action to foreclose a trust deed.

As to the rights of the original complainants, the holder of the indebtedness and the trustee in the trust deed, there is no contention. It is admitted that they are entitled to the relief prayed for, and that the rights of all other parties herein are subordinate.

The contention upon this record is between appellants and the appellees Jacobson and Bernstein. Jacobson owned the premises subject to said trust deed. On August 20, 1897, two policies of insurance were issued to the owner of the premises, Jacobson; one by the Ætna Insurance Company, and the other by the London & Lancaster and the Norwalk, under the joint title of "English and American

Underwriters." Each policy was for the sum of $1,500, and each had attached thereto a mortgage clause which provided that the loss, if any, should be payable to the trustee named in said trust deed. It was provided in each policy that the same should be void as to the insured "if any change other than by death of an insured take place in the interest, title or possession of the subject of insurance, or if this policy be assigned before loss." It was further provided that in case of loss, the insured should file proofs of loss with the company within sixty days after the fire.

November 20, 1899, Jacobson executed and delivered to Henry Bernstein a quit-claim deed of the premises. February 4, 1900, the premises were injured by fire. Negotiations between the trustee and the companies began and were carried on until June 9, 1900, when the trustee filed proofs of loss, claiming damages in the sum of $942, which the companies paid to him as the agreed loss. Neither Bernstein nor Jacobson filed separate proofs of loss.

The trustee and the owner of the indebtedness began a foreclosure upon such trust deed. The companies answered, and then filed a cross-bill, in which they alleged that by reason of the transfer of the title to the premises and the failure to file proofs of loss, the policies became void, and that by reason of the payment to the trustee they became entitled to subrogation to the amount of such payment. Bernstein answered the cross-bill, setting up an indebtedness of Jacobson to him, and that the quit-claim deed, although in form an absolute conveyance, was in fact a mortgage; that the trustee in making such proofs of loss had acted as the agent of the assured, and that the companies were not entitled to be subrogated. Jacobson also filed an answer identical in every particular to that of Bernstein. Certain intervening petitions for mechanics' liens were filed. The evidence tended to prove that Bernstein, as owner, had contracted with one Scheresewsky to repair the premises for $1,050, and that it was agreed between these two that the compensation therefor should be

but $750. This latter amount was finally agreed upon by all parties as due under such mechanics' liens.

In this condition of the pleadings the cause was referred to a master, proofs taken and master's report filed and exceptions thereto argued. The report of the master, after finding the amount due under the trust deed as a first lien upon said premises, found that the quit-claim deed from Jacobson to Bernstein was not intended as an absolute conveyance, but was intended to be, and hence is, in fact, a mortgage; that the assignment of the policies was not made an issue in the cross-bill as it then stood, and therefore that question is immaterial; and that by the failure of Jacobson to file proofs of loss within the time required by the policies, he had forfeited his rights thereunder. The report then found that the companies were entitled to be subrogated to the rights of the holder of the indebtedness to the extent of the moneys paid by them, subject, however, to the remainder of such indebtedness, but superior to the rights of any other parties to the suit; that the lien claimants came next, to an amount not exceeding in the aggregate $750; and that Henry Bernstein was entitled to a lien on said premises for $881.07.

Afterward the cause was re-referred to the master to take such further evidence, if any, as he might think best, and to report again. Appellees amended their answer to the amended cross-bill by alleging that within ten days after the happening of the fire, appellants, and each of them, denied liability upon said policies to Abraham Jacobson or to his duly authorized agent, on the ground that the premises had been previously conveyed by Jacobson to Bernstein. Upon this reference further evidence was taken by both appellants and appellees, and a supplemental report was filed by the master.

This supplemental report, after affirming the conclusions reached in the prior report, found that the denial of liability by the companies upon the ground that Jacobson conveyed to Henry Bernstein not only came to the knowledge of Jacobson's agent, but came to the knowledge of

Jacobson within the period of time allowed by the policies for filing proofs of loss; and holds that appellants, by denial of liability, waived the provisions of the policies requiring proofs of loss to be filed, and that said policies were not forfeited by the failure of Jacobson to comply therewith. It also holds that the assignment of the policies was not made until after the loss had accrued. The report ends as follows:

"I therefore reach the following conclusions: First, that the quit-claim deed in question was a mortgage and not an absolute conveyance; second, proofs of loss were waived by the companies so that the policies have not been forfeited because of Jacobson's failure to file them; third, that there has been no violation of the policies concerning assignments thereof. I recommend that the cross-bill be dismissed."

Exceptions were filed to this report. The court, after hearing counsel, overruled the exceptions and entered a decree conforming to the master's report. From that decree this appeal was perfected, by which appellants seek a reversal thereof so far as the same orders the dismissal of their cross-bill and denies them the relief sought therein.

RITSHER, MONTGOMERY & HART, attorneys for appellants.

BLUM & BLUM, attorneys for appellees.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

Appellants contend that by the assignment of the policies Jacobson forfeited all rights thereunder. Forfeitures are not favored in the law. The burden is on him who claims the benefit of a forfeiture to clearly establish his right. The witness Kuhl, an employe of the holder of the trust deed indebtedness, who was called by appellants, and whose testimony stands uncontradicted, testifies that after the fire he took the policies to the office of Mr. Blum, and there the assignments were written upon the back of them; that he then carried them to the companies and asked them to consent to the assignments, which they refused to do.

Each of the policies provides that it shall be void "if this policy be assigned before a loss." Here is no ground of forfeiture. The contention in this regard can not be sustained.

Appellants further assert that the making of the quit-claim deed from Jacobson to Bernstein rendered the policies void. Each policy provides that it shall be void "if any change otherwise than by death of an insured take place in the interest, title or possession of the subject of insurance." The question then arises, is this instrument a deed, or was it intended as a mortgage? The execution of a mortgage upon insured property is not a violation of the covenant against a change of title. A deed absolute in form, may be shown by parol to be a security only, if such be the fact. The intention of the parties governs. German Ins. Co. v. Gibe, 162 Ill. 251.

Appellants declare that in order to show that an instrument, a deed in form, is a mortgage in fact, the proof must be clear and convincing. The authorities cited to sustain this proposition are contests between grantor and grantee. It is doubtful if that rule applies to cases like the one at bar, where the question is mooted with a third party, and where, if defeated, both grantor and grantee lose substantial rights. Without, however, passing upon that question, we call attention to the fact that the direct evidence in the record tends strongly to prove that the deed was in fact a mortgage. Appellant Bernstein produced a note signed by Jacobson, which indicates a prior indebtedness from the latter to the former. Bernstein never took possession of the premises. After he received the deed, interest was paid to him upon the alleged indebtedness. On the other hand, after the premises were damaged by fire, Bernstein, in his own name, entered into a contract for the repair of the building; and there was an attempt by some one, presumably Jacobson, to assign the policies to Bernstein. A careful examination of the record convinces us that it contains sufficient evidence, if believed, to justify the master in his conclusion that this quit-claim deed, in fact and in equity, was a mortgage.

Appellants also contend that they are not liable upon these policies, because appellees filed no proofs of loss. Proofs of loss were filed by the trustee and accepted by the companies. Unless the duty of filing such proofs upon the part of appellees was waived by the acts or words of appellants, the right of Jacobson to recover upon the policies was lost. It is claimed by appellees that there is abundant evidence showing that appellants, within a few days after the loss, denied liability upon the policies to Abraham Bernstein, the agent of appellee Jacobson. A distinct denial of liability, and refusal to pay on the ground that there is no liability, is a waiver of the condition requiring proof of loss. May on Ins., Sec. 469.

It appears from the evidence that appellants learned of the existence of the quit-claim deed immediately after the fire, and within a very few days thereafter denied liability upon that ground in a conference with the trustee and Abraham Bernstein. The witness Williams, called by appellees, who represented the Ætna Insurance Co., says that Abraham Bernstein said that he represented appellee Jacobson. But Williams did not represent the other appellant. Abraham Bernstein says that the wife of Jacobson, as soon as the loss occurred, wrote to her husband in Silverton, Colorado, and that the latter wrote to the witness to represent him and to settle the loss. This letter is not produced. It could not have been received by February 8th, when the second interview between him and the appellants is said to have been had. Nothing was said about such a letter until after the first report of the master was announced, in which Jacobson was held to have forfeited his rights under the policies because of his failure to file proofs of loss, it not appearing that the denial of liability by the companies was brought either to his knowledge or to the knowledge of any one acting for him. But Bernstein did produce a letter, which is in evidence, from himself to appellee Jacobson, dated February 12th, in which he acknowledges the receipt of a letter from appellee authorizing the witness to see the insurance companies and to settle the loss.

There is much in this record that tends to discredit the witness Abraham Bernstein, and to throw doubt upon his assertion that he represented Jacobson at any time when the companies denied liability in his presence.  The conflict upon this question is direct, and this is especially true as to the alleged denial by the English and American Under. writers.  But even if we might have reached a different conclusion had the matter been submitted to us *in limine*, we can not reverse upon that ground alone, where the evidence fairly tends to establish a different conclusion which was reached by the master and concurred in by the chancellor.

" The witnesses were before the master and heard by him, and when such is the case, due weight should be given, because of the advantage the master derived from seeing the witnesses, in judging of their credibility." Hubbard v. Hubbard, 79 Ill. App. 217, and cases cited.

Where the finding of the master has been approved by the chancellor, an appellate tribunal will not disturb the finding, unless the weight of the evidence is manifestly and clearly against the finding.  Siegel v. Andrews & Co., 181 Ill. 356.

Finding no reversible error in the record, we affirm the decree of the Superior Court.